CC-97-205                                    1

En el Tribunal Supremo de Puerto Rico

| DANIEL RODRIGUEZ DIAZ Y OTROS<br>     Recurrente<br><br>     .V<br><br>AUTORIDAD DE TELEFONOS DE PUERTO RICO<br><br>     Recurrido | Certiorari<br><br>TSPR98-62 |
| --- | --- |

Número del Caso: CC-97-0205

Abogados Parte Recurrente: LCDA. MARGARITA CARRILLO ITURRINO

Abogados Parte Recurrida: GOLDMAN, ANTONETTI & CORDOVA
LCDO. HERBER E. LUGO RIGAU

Tribunal de Instancia: Superior, Sala de Bayamón

Juez del Tribunal de Primera Instancia: HON. CESAR N. CORDERO RABELL

Tribunal de Circuito de Apelaciones: CIRCUITO REGIONAL I

Juez Ponente: HON. ANGEL GONZALEZ ROMAN

Fecha: 6/29/1998

Materia: SENTENCIA DECLARATORIA

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Daniel Rodríguez Díaz, César
Flores Carrasquillo y otros

    Apelantes-recurrentes


      v.                                    CC-97-205      Certiorari


Autoridad de Teléfonos de
Puerto Rico, Puerto Rico
Telephone Company

    Apelados-recurridos


PER CURIAM


San Juan, Puerto Rico, a 29 de mayo de 1998


I

Daniel Rodríguez Díaz, César Flores Carras-quillo, Miguel Meléndez Acosta y Segundo Díaz Ortiz -empleados todos de la Puerto Rico Telephone Company (P.R.T.C.)-[1] solicitaron sentencia declaratoria del Tribunal de Primera Instancia, Sala Superior de Bayamón, para que se les acreditase e incorporase a su sistema de retiro los años de servicio prestados previamente en agencias gubernamentales.

---

[1] Subsiguientemente, Miguel A. Rivera Soto y setenta y cuatro (74) otros empleados de la P.R.T.C. solicitaron intervenir. Dicha intervención fue denegada el 16 de febrero de 1993 y notificada el 24 de febrero de 1993.

Basaron este reclamo en la **Ley de Reciprocidad** (Núm. 59 de 10 de junio de 1953, según enmendada, 3 L.P.R.A. sec. 797, et seq.). Además alegaron que la Ley de Seguridad de Ingresos por Jubilación ("Employee Retirement Income Security Act of 1974") –ERISA–, no aplicaba a la P.R.T.C., aún cuando dicha empresa estaba suscrita a la misma. En su contestación, la P.R.T.C. negó la procedencia de dicho reclamo y adujo, como defensas afirmativas, falta de jurisdicción sobre la materia por estar el campo ocupado por ley federal (ERISA) y no agotar los remedios administrativos.

Subsiguientemente, la P.R.T.C. solicitó la desestimación. Expuso que la **Ley de Reciprocidad** no le aplicaba y no existía fuente estatuaria o jurisprudencial que proveyera el remedio solicitado. En oposición, los demandantes Rodríguez Díaz, et al., argumentaron que el carácter público de la Telefónica, así como las reglas de hermenéutica correspondientes a planes de jubilación y de pensiones de empleados públicos –que fomentan la movilidad dentro de las dependencias gubernamentales–, impedían tal desestimación. El 19 de marzo de 1996, el ilustrado foro de Instancia (Hon. Cesar N. Cordero Rabell), desestimó. En su sentencia concluyó que la **Ley de Reciprocidad** no proveía el remedio solicitado y excluía a la P.R.T.C. en su definición de "Patrono" y a su plan de retiro del concepto de "Sistema de Retiro". Dicho foro se abstuvo de examinar la aplicabilidad de ERISA y su posible efecto de campo ocupado.

Previa solicitud de Determinaciones de Hechos adicionales, Rodríguez Díaz, et al. apelaron. Sostuvieron que el tribunal de instancia erró al interpretar restrictivamente las leyes de retiro, y determinar específicamente que la **Ley de Reciprocidad** no aplicaba. El 21 de enero de 1997, el reputado Tribunal de Circuito de Apelaciones (Hons. Ramos Buonomo, Cordova Arone y González Roman) confirmó. En reconsideración, reiteró su criterio. Inconforme, a solicitud de Rodríguez Díaz, et al., revisamos vía certiorari.[2]

---

[2] Discuten los siguientes señalamientos:

"A. Incidió el Tribunal de Circuito de Apelaciones al no considerar los argumentos relacionados con la inaplicabilidad de la 'Employment Retirement Income Security Act of 1974' a la Puerto Rico Telephone Company, a pesar de que el Tribunal de Primera Instancia en su sentencia de modo expreso concluyó que el plan de retiro de la telefónica se rige por esta ley, sin exponer los fundamentos bajo los cuales llegó a tal conclusión.

B. Incidió el Tribunal de Circuito de Apelaciones al concluir que los recurrentes no tienen derecho a que se les transfieran al Plan de Retiro de la P.R.T.C. los años de servicios prestados en agencias y departamentos del E.L.A. para los que cotizaron en el Sistema de Retiro de los Empleados del Gobierno y la Judicatura.

C. Erró el Tribunal de Circuito de Apelaciones al concluir que la naturaleza de subsidiaria de la P.R.T.C. de una empresa pública impide que se le reconozca a los recurrentes una continuidad de derechos y se les acredite al sistema de retiro de la Telefónica los años de servicios acumulados en el Sistema de Retiro de los Empleados del Gobierno.

D. Incidió el Tribunal de Circuito de Apelaciones al concluir que los beneficios que reclaman los peticionarios no dependen de la función publica que realizan como empleados de

II

De su faz, este caso plantea varias controversias cuyo núcleo se reduce inicialmente a determinar si la **Ley de Reciprocidad** aplica y viabiliza el remedio solicitado. Examinémosla.

El Art. 1 define así su alcance:

"[S]e establece un plan para garantizar la continuidad de créditos por servicios,..., entre el Sistema de Retiro de los Empleados del Gobierno de Puerto Rico y sus Instrumentalidades, el Sistema de Anualidades y Pensiones para Maestros de Puerto Rico, el Sistema de Retiro de la Universidad de Puerto Rico, el Sistema de Retiro de los Empleados de

la Telefónica y sí del sistema de remuneración que les aprovecha y de las disposiciones de ley que gobiernan cada sistema de retiro en particular.

E. Erró el Tribunal de Circuito de Apelaciones al concluir que la forma distinta en que se retribuye a la gran mayoría de los empleados de la Telefónica y el derecho a la negociación colectiva de los empleados unionados son criterios que impiden se reconozca el derecho a que se les acrediten los años de servicio prestados en agencias y departamentos del E.L.A. al Sistema de Retiro de la Telefónica.

F. Incidió el Tribunal de Circuito de Apelaciones al concluir que a pesar de que los empleados de la Telefónica se les ha reconocido jurisprudencialmente su carácter de empleados públicos ello no es necesariamente el factor determinante al decidir la forma en que han de tratarse sus derechos y, en particular, el de jubilación, y concluir que el factor decisivo es el fin económico que persigue dicha corporación.

G. Cometió error el Tribunal de Circuito al determinar que la continuidad de créditos entre los sistemas de retiro de empleados públicos que garantiza el articulo 3 de la Ley de Reciprocidad es para sistemas que se nutren de aportaciones conjuntas y sean de similar naturaleza."

> la Autoridad de Energía Eléctrica de Puerto Rico y cualquier otro sistema que se creare en el futuro mediante el cual los empleados participantes de esos sistemas mantengan la continuidad de todos sus derechos por todos los servicios prestados al Estado Libre Asociado de Puerto Rico, sus instrumentalidades y dependencias cubiertas por cualquier sistema de retiro." (3 L.P.R.A., sec. 797).

El Art. 2 define y visualiza "Patrono" al "Gobierno del Estado Libre Asociado de Puerto Rico y cualquier empresa pública o instrumentalidad del Gobierno Estatal de Puerto Rico, **pero excluyendo las empresas subsidiarias de tales instrumentalidades o empresas públicas**, e incluirá la Universidad de Puerto Rico y la Asociación de Maestros de Puerto Rico." (3 L.P.R.A., sec. 798). El término "Patrono" es utilizado para delinear las empresas o instrumentalidades gubernamentales, mencionadas en el Art. 1, obligadas a reconocer los derechos adquiridos por servicio prestado por empleados que se trasladen entre éstas.

A la luz de esta diferencia, ¿cae la P.R.T.C. bajo la definición legal de "Patrono"? La determinación requiere repasar suscintamente su origen.

El 6 de mayo de 1974, la Asamblea Legislativa aprobó la Ley Núm. 25 (27 L.P.R.A. sec. 401 et seq.), y creó la **Autoridad de Teléfonos de P.R.** Su exposición de motivos explica que "...será una corporación pública que adquirirá y operará, ..., todo el sistema de comunicación telefónica y telegráfica de Puerto Rico...". Su Art. 9 –**Corporaciones Subsidiarias**–, dispone que "...nada en esta ley se

interpretará como que se le concede a la Puerto Rico Telephone Company o a cualquier compañía cuyo capital sea adquirido por la Autoridad, la condición de una corporación pública del Estado Libre Asociado de Puerto Rico." Así, el Informe Conjunto de las Comisiones de Gobierno, Hacienda, Desarrollo Socioeconómico y Planificación, Comercio e Industria, Asuntos del Consumidor y Jurídico-Civil, la contempla "...como una corporación privada **subsidiaria de la Autoridad.** Esta preservación del status de compañía privada serviría para asegurar la tributabilidad de los intereses que se paguen sobre $120 millones en obligaciones vigentes ("deventures"). Una vez vencida o retirada, la deuda de la Telefónica[,] la Autoridad podría disolverla. En adición permitiría flexibilidad en la planificación y estructuración de la Telefónica." (Pág. 39).

El Art. 5 ordenó a la Autoridad de Teléfonos que adquiriera todas las acciones comunes emitidas y en circulación de la P.R.T.C., -a la sazón, compañía privada organizada bajo la Ley de Corporaciones del Estado de Delaware- que tenía la franquicia para proveer la mayor parte del servicio telefónico en Puerto Rico.

Completada su adquisición, en varias ocasiones nos hemos expresado sobre su naturaleza. En Torres Ponce v. Jiménez, 113 D.P.R. 58 (1982), extendimos el principio de mérito a la Autoridad de Teléfonos **y su subsidiaria**, la Puerto Rico Telephone Co., "no obstante su organización como corporación privada." Allí clasificamos a la P.R.T.C. como corporación público-privada para distinguirla de las

corporaciones creadas por estatutos y de las establecidas bajo leyes de corporaciones privadas que pertenecen, completa o parcialmente, al Estado. Esta designación mixta, público-privada, le permite a la P.R.T.C. cumplir sus propósitos eficazmente. En P.R. Tel. Co. v. Rivera Marrero, 114 D.P.R. 360 (1983)[3], y en Pueblo v. Hernández Torres y Barreda, 125 D.P.R. 560 (1990)[4], ratificamos y expandimos Torres Ponce v. Jiménez, supra.

III

La **Ley de Reciprocidad** revela diáfanamente la intención de la Asamblea Legislativa de excluir de su ámbito y beneficios a **las empresas subsidiarias** de instrumentalidades o empresas públicas. No se cuestiona seriamente que la P.R.T.C. es una Corporación **Subsidiaria** de la Autoridad de Teléfonos, y ésta a su vez, una Corporación Pública del E.L.A. Como tal, está fuera de la definición de "Patrono" establecida en la **Ley de**

---

[3]    La Puerto Rico Telephone Company es una corporación público-privada y por su naturaleza está sujeta a fiscalización por el Contralor de Puerto Rico. La Ley Núm. 92, aprobada el 4 de junio de 1983, enmendó el Artículo 9 de la Ley Núm. 25 del 6 de mayo de 1974 (27 L.P.R.A. sec. 409), a los fines de disponer la fiscalización por el Contralor de P.R. de los ingresos, cuentas y desembolsos de la Autoridad de Teléfonos P.R., de la P.R.T.C., y de **cualesquiera corporaciones o entidades subsidiarias** de dicha Autoridad de Teléfonos de P.R.

[4]    "[L]a Telefónica debe considerarse como una entidad cuya naturaleza es mixta o dual y, en consecuencia, según sea la situación que se tenga ante sí, ha de variar la forma en que se ha de tratar. No obstante, las situaciones bajo las cuales se considere como empresa privada son aquellas donde hacer lo contrario afectaría los propósitos que tuvo el legislador al aprobar el estatuto viabilizador. Esto es, el trato que como corporación privada reciba esta entidad ha de ser a los únicos fines de facilitar el fin económico que se persigue y su funcionamiento independiente con miras a ofrecer un mejor servicio." Pág. 571.

**Reciprocidad** y sus empleados están excluidos de recibir sus beneficios.

Esta conclusión no varía por ser la Ley de Reciprocidad anterior a la creación de la Autoridad de Teléfonos y la adquisición de la P.R.T.C. La Asamblea Legislativa no ha extendido estos beneficios a los empleados de la P.R.T.C., aunque sí a los de la Autoridad de Teléfonos por su condición de instrumentalidad pública. El carácter mixto, público-privado, que le hemos atribuido jurídicamente a la P.R.T.C., no tiene efecto de extenderle la aplicabilidad de la **Ley de Reciprocidad. Ante este foro no se niega su condición de subsidiaria.**

Vía interpretación forzada, no podemos jurídicamente extender un privilegio a una corporación **subsidiaria** que el Legislador claramente negó. Aunque las leyes sobre pensiones de retiro deben interpretarse liberalmente a favor del beneficiario[5], en aras de esa liberalidad, no es permisible ignorar la letra de la ley.[6] "En el desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la

---

[5] Zanfiorenzo Zaragoza v. Administración Sistemas de Retiro Empleados De Gobierno y Judicatura, res. en 16 de marzo de 1995; Villamil Suárez v. Dpto. de Transportación y Obras Públicas, res. en 30 de junio de 1993.

[6] "Cuando la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu." Art. 14, Código Civil, (31 L.P.R.A. sec. 14).

rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable." Bernier, R.E. y Cuevas Segarra, J.A., Aprobación e Interpretación de las Leyes de Puerto Rico, 2da. edición, Publicaciones J.T.S., 1987, pág. 299.

Finalmente, aclaramos que la inaplicabilidad de la **Ley de Reciprocidad** no es debido a que los tipos de planes de retiro sean incompatibles entre sí o que un plan fue creado mediante estatuto y el otro no. Surge en virtud de una intención y texto claro del Legislador de no beneficiar a los empleados de subsidiarias de instrumentalidades públicas y una determinación clara de que la P.R.T.C. sea una subsidiaria de una instrumentalidad pública.

Se dictará Sentencia confirmatoria.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Daniel Rodríguez Díaz, César
Flores Carrasquillo y otros

    Apelantes-recurrentes


       v.                 CC-97-205     Certiorari


Autoridad de Teléfonos de
Puerto Rico, Puerto Rico
Telephone Company

    Apelados-recurridos


SENTENCIA


San Juan, Puerto Rico, a 29 de mayo de 1998


    Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se confirma la Sentencia del Tribunal de Circuito de Apelaciones, Circuito Regional San Juan III, de fecha 27 de enero de 1997.

    Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y los Jueces Asociados señores Hernández Denton y Fuster Berlingeri disienten sin opinión escrita.


                   Isabel Llompart Zeno
            Secretaria del Tribunal Supremo